OIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:18-CT-3366-FL

| | |
|---|---|
| CHARLES A. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CLAYTON CULLINS, BRYAN ) | |
| LEAVENWORTH, and TIFFANY ) | |
| TAYLOR, ) | |
| ) | |
| Defendants.[1] ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 111). Plaintiff filed a motion for partial summary judgment (DE 128), which the court construes herein as a response. In this posture, the issues raised are ripe for ruling. For the following reasons, defendants' motion is granted and plaintiff's motion is denied.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing a complaint on December 26, 2018, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, based upon alleged excessive force. Following an initial period of frivolity review, the court allowed plaintiff to proceed. Plaintiff sues defendants in both their individual and official

---

[1] Formerly- named defendants Nurse Taylor and Officer Ashe were dismissed by court order on July 30, 2020, and January 26, 2022, respectively. Further, defendants provide the full names for defendants Officer Leavenworth and Nurse Taylor are Bryan Leavenworth and Tiffany Taylor. Accordingly, the clerk will be ordered to amend "Officer Leavenworth" to "Bryan Leavenworth" and "Nurse Taylor" to "Tiffany Taylor."

capacities seeking monetary damages, changes to the inmate disciplinary process, treatment for arm pain, and a declaration that defendants violated the Constitution.

Following a period of extended discovery, defendants filed the instant motion for summary judgment on July 8, 2021, relying on a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising the following: 1) Offender Information Data; 2) Offender Infractions; 3) plaintiff's medical records and mental health records; 4) photographs of plaintiff dated June 28, 2018; 5) North Carolina Department of Public Safety ("NCDPS") Use of Force Policy and Nurse Training Policy; and 6) defendants' declarations.

Plaintiff requested an extension to respond, but on February 14, 2022, he filed an untimely motion for partial summary judgment. The court construes this motion as a response to defendants' motion for summary judgment. As such, the response relies on a memorandum in support, statement of material and disputed facts, and appendix of exhibits thereto, comprising the following: 1) an incident report dated June 28, 2018; 2) notices of plaintiff's disciplinary rights and photographs; 3) offense and disciplinary reports dated July 1, 2018; July 25, 2018; and September 13, 2018; 4) plaintiff's infraction information; 5) medical records dated June 28, 2018; July 25, 2018; August 19, 2018; September 18, 2018; September 23, 2018; November 28, 2018; and December 4, 2018; 6) discovery provided by defendants; 7) the NCDPS Use of Force Policy; 8) grievance procedure documents; 9) sick call requests; and 10) withdrawal notice of attorney with North Carolina Prisoner Legal Services, Inc.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On June 28, 2018, at approximately 10:00 a.m., plaintiff was in his cell when defendant Bryan Leavenworth ("Leavenworth") and another officer, Apollo Roderick Ashe ("Ashe"), ordered

2

plaintiff to place his hands through the door to be handcuffed. (Pl. Decl. (DE 128) at 3; Leavenworth Decl. (DE 114-2) ¶ 3). Defendant Leavenworth and Ashe called defendant Clayton Cullins ("Cullins"), their supervisor, to plaintiff's cell. (Pl. Decl. (DE 128) at 3; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Once defendant Cullins arrived, plaintiff's cell door was opened, and plaintiff allowed the handcuffs to be applied. (Pl. Decl. (DE 128) at 3; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). However, plaintiff immediately complained that the handcuffs were too tight. (Pl. Decl. (DE 128) at 3–4; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3).

Defendant Cullins went to check the handcuffs. (Pl. Decl. (DE 128) at 3; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Defendant Cullins complained plaintiff had trapped Cullins's pinky in the cuffs and ordered plaintiff to stop because plaintiff was hurting him.[2] (Pl. Decl. (DE 128) at 4; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Hearing defendant Cullins say he was being assaulted, defendant Leavenworth and Ashe took control of plaintiff's arms and allegedly threw plaintiff to the floor.[3] (Pl. Decl. (DE 128) at 4; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Defendant Cullins ordered plaintiff to stop resisting, and plaintiff complied. (Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Defendant Leavenworth and Ashe then placed plaintiff in full restraints consisting of leg shackles, waist chain, and connection

---

[2] It is disputed whether defendant Cullins actually placed his pinky in the handcuffs. (See Pl. Decl. (DE 128) at 3–4; Cullins Decl. (DE 114-3) ¶ 3).

[3] It is disputed whether defendant Leavenworth "placed" or "threw" plaintiff to the floor. (See Pl. Decl. (DE 128) at 4; Leavenworth Decl. (DE 114-2) ¶ 3).

3

chain in addition to the handcuffs. (Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). They then notified medical staff that force was used, and plaintiff needed to be evaluated. (Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3).

Defendant Tyler conducted the use of force evaluation. (Pl. Decl. (DE 128) at 4; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Tyler Decl. (DE 114-4) ¶ 9). Plaintiff complained to defendant Tyler that the handcuffs were too tight. (Pl. Decl. (DE 128) at 4; Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 9). She observed his wrists, but did not observe any wounds, abrasions, or redness. (Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 10; Tyler Decl. (DE 114-4) ¶ 9). After the evaluation, unnamed officers came to escort plaintiff back to his cell. (Pl. Decl. (DE 128) at 5). Plaintiff complained that the leg chains were too tight for him to walk. (Pl. Decl. (DE 128) at 5). Once back in his cell, defendant Cullins took pictures of plaintiff through the cell window. (Pl. Decl. (DE 128) at 5; Incident Report, Pl.'s Ex. A (DE 131-1) at 1).

Plaintiff was in full restraints in his cell without assistance prior to a mental health appointment previously scheduled. (Pl. Decl. (DE 128) at 5–6). During the appointment, he again complained again about the restraints. (Pl. Decl. (DE 128) at 6; Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 12). Following the use of force incident, plaintiff complained he experienced numbness in his arms and back pain. (Sick Call Requests, Pl. Ex. H (DE 131-8) at 3–7; Medical Record dated Sept. 23, 2018, Pl. Ex. H (DE 131-8) at 19; Medical Record dated Dec. 4, 2018, Pl. Ex. H (DE 131-8) at 26).

# COURT'S DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B.  Analysis

   1.  Official Capacity Claims

Plaintiff's official capacity claims for monetary damages are without merit. Official capacity clams are "in effect, . . . against the governmental entity employing [the defendant]." Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2009). And where defendants were employed by a state agency during the relevant time period, these claims are barred by the Eleventh Amendment to the United States Constitution. See Board of Trustees of the Univ. of Ala. V. Garret, 531 U.S. 356, 363 (2001); Idaho v. Coeur d' Alene Tribe of Idaho, 521 U.S. 261, 267 (1997); Gray v. Laws, 51 F.3d 426, 430 (4th Cir. 1995). Accordingly, these claims are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).[4]

   2.  Excessive Force Claims

Plaintiff alleges defendant Leavenworth used excessive force against him when he placed

---

[4]  Section 1915(e)(2) provides that where the plaintiff proceeds in forma pauperis, the court may dismiss the action "at any time" if it determines the plaintiff has failed to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B).

6

him in restraints that were allegedly too tight and threw him to the floor, and defendants Cullins and Tyler did not intervene. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the forced used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992).

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" Brooks v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113. "Corrections officers act in a 'good faith effort to maintain or restore discipline'–that is, with a permissible motive–not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Id. (quoting Hudson, 503 U.S. at 6-7); see also Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "But corrections officers cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,'–when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113 (quoting

7

Whitley, 475 U.S. at 320-21); see also Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996).

At the summary judgment stage, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). The officers' subjective motive may be proved through direct or circumstantial evidence. Id. at 308-09; Brooks, 924 F.3d at 114-16. With respect to circumstantial evidence, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Brooks, 924 F.3d at 116. These factors are: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 321).

      a.    Defendant Leavenworth

Assuming plaintiff meets the objective prong, he fails to show defendant Leavenworth acted with a "sufficiently culpable state of mind." See Wilson, 501 U.S. at 297. Applying the Whitley factors, the court concludes defendant Leavenworth applied force in a good faith effort to maintain and restore discipline. The need for application of force and the perceived threat that the application of force was intended to quell clearly weighed in defendant Leavenworth's in these circumstances. The undisputed evidence demonstrates that defendant Leavenworth observed defendant Cullins move to check the handcuffs and complain that plaintiff had trapped Cullins's pinky, hurting him. Not only did it appear to defendant Leavenworth that plaintiff's handcuffs were not too tight because defendant Cullins fit his pinky between the cuff and plaintiff's wrist, but also he needed to use force to ensure defendant Cullins's physical safety and maintain order

8

and discipline in these circumstances. See Brooks, 924 F.3d at 113 ("[A] manifest and immediate need for the protective use of force gives rise to a powerful logical inference that officers in fact used force for just that reason."); see also Allen v. Anderson, No. 5:13-CT-3238-FL, 2018 WL 1542232, at *6 (E.D.N.C. Mar. 29, 2018), aff'd, 736 F. App'x 416 (4th Cir. 2018).

Regarding the second factor, plaintiff argues that it is significant that defendant Leavenworth threw him to the floor. Viewing the facts in the light most favorable to plaintiff, assuming that defendant Leavenworth "threw" plaintiff to the floor, (Pl. Decl. (DE 128) at 4), defendant Leavenworth's reaction nonetheless was directly proportionate to the need to end the perceived assault on defendant Cullins. In defendant Leavenworth's view, plaintiff's actions presented a risk to defendant Cullins's safety and the order administration of the institution, and forced him to make a split-second decision to use physical force. See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments–in circumstances that are tense, uncertain, and rapidly evolving–about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation occurred).

The fourth Whitley factor–whether defendant made efforts to temper the severity of the response–weighs in favor of finding that defendant's actions were a good faith effort to maintain or restore discipline. As set forth above, the court assumes defendant threw plaintiff to the ground after defendant Cullins complained of being assaulted. Once the perceived assault stopped, however, defendant Leavenworth applied no more force. (See Pl. Decl. (DE 128) at 4; Incident Report, Pl.'s Ex. A (DE 131-1) at 1; Leavenworth Decl. (DE 114-2) ¶ 3; Cullins Decl. (DE 114-3) ¶ 3). Pepper spray and batons were not used. (See id.)

9

Finally, while not dispositive, the court notes that plaintiff's lack of significant injury also weighs in favor of defendant. See Wilkins, 559 U.S. at 37 ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." (internal quotations omitted)); see also Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). Here, plaintiff was medically screened after the use of force incident, and the undisputed medical evidence demonstrates plaintiff suffered no injuries from defendant Leavenworth's actions. (See Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 9–10). Plaintiff's only complaints were about his handcuffs. (See Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 9–10).

Upon consideration of the entire record against the Whitley factors, and particularly in light of the risk to officer safety plaintiff posed in these circumstances, the court finds no reasonable jury would find defendant acted maliciously and for the very purpose of causing harm.

        b.        Defendant Cullins and Tyler

Defendants Cullins and Tyler argue they are not liable under theories of supervisory and bystander liability. Given the fact that there is no underlying constitutional violation, plaintiff's supervisor and bystander liability claims against defendants Cullins and Tyler also lack merit. See Hinkle v. City of Clarksburg, 81 F.3d 416, 420 (4th Cir. 1996) (holding that absent an underlying constitutional violation, no § 1983 liability attaches to a supervisor); Thomas v. Holly, 533 F. App'x 208, 221 (4th Cir. 2013) (noting that a finding of bystander liability for a defendant required a finding of excessive force by another defendant). Thus, defendants' motion for summary judgment is granted as to these claims.

      c.      Length of Time in Restraints

Although plaintiff's filings are not the model of clarity, it appears plaintiff also alleges he was in restraints for an excessive amount of time prior to his mental health appointment. Plaintiff alleges he was in restraints for hours without assistance prior to his appointment. (Pl. Decl. (DE 128) at 5–6). However, such an allegation is belied by medical records showing defendant Tyler conducted her use of force evaluation at 10:20 a.m., (Medical Record dated June 28, 2018, Pl. Ex. H (DE 131-8) at 9), and the mental health appointment occurred at 10:32 a.m., (id. at 12). See Scott, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonably jury could believe it, a court should not adopt that version of the facts for purpose of ruling on a motion for summary judgment."); Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019) (explaining summary judgment "is proper under Scott only when there is evidence . . . of undisputed authenticity that shows some material element of the plaintiff's account to be blatantly and demonstrably false" (internal quotation omitted)). Accordingly, plaintiff fails to show specific, material facts giving rise to a genuine issue, and defendants are entitled to summary judgment.

## CONCLUSION

Based on the foregoing, plaintiff's official capacity claims for money damages are DISMISSED. Defendants' motion for summary judgment (DE 111) is GRANTED. Plaintiff's motion for partial summary judgment (DE 128), construed herein as a response, is DENIED. The clerk is DIRECTED to amend the docket as provided in footnote one and to close this case.

11

SO ORDERED, this the 29th day of March, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge